IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF OKLAHOMA

EZEKIEL DAVIS,

                Plaintiff,

v.

                              Case No. 18-CV-396-JFH-SPS

CORE CIVIC, INC. et al.,

                Defendants.

## OPINION AND ORDER

Plaintiff is a pro se prisoner in the custody of the Oklahoma Department of Corrections ("DOC") who is incarcerated at Davis Correctional Facility ("DCF") in Holdenville, Oklahoma. He brings this action under the authority of 42 U.S.C. § 1983, seeking relief for alleged constitutional violations during his incarceration at DCF.

The remaining DCF defendants are: Core Civic, Inc.; James Yates, Warden; Kevin Brown, Chief of Security; J. Dorman, Chief; Mr. Perez, Assistant Warden; Mr. Gentry, Assistant Warden; Tiffany Ade, Max Unit Manager; Ray Larimer, Health Service Administrator; Fred Sanders, M.D.; Mr. Pfaff, Max Unit Case Manager; Mr. Pfaff, Max Unit Counselor; Ms. Boggs, Max Unit Counselor; Wayda Stamey, Correctional Officer; Joshua Phillips, Correctional Officer; Rhoda Shivley, Nurse; Sam Hussan, Law Library Supervisor; J. Morales, Mailroom Supervisor; Maria Martinez, Mailroom Clerk; Mr. Collins, Correctional Officer; Sgt. Robinson, Disciplinary Supervisor; Mr. Key, Disciplinary Officer/Investigator; Susan Burkhalter, Nurse Practitioner; Serena Brewer, Nurse Practitioner; Diana Jones, Manager of Operations Finance; Terry Underwood, Grievance/ Misconduct Coordinator; Dr. Keith Ivens, Director, Correctional Medical

1

Associates Physician; and Dr. Yvonne Nean, a.k.a. Dr. Yvonne Neau, Correctional Medical Associates Physician ("DCF Defendants").

The remaining defendants from OSP and DOC are:  Mark Knutson, Director's Designee; Johnny Blevins, Inspector General; DOC General Counsel; Joe Allbaugh, DOC Director; Mike Carpenter, OSP Warden; Buddy Honaker, DOC Medical Service Administrator; Capt. T. Clellen, Correctional Officer; Dr. Marlar, OSP Medical Director; Jerry Perry, OSP H-Block Unit Manager; Lisa Williams, OSP H-Block Case Manager; Margaret Green, OSP C-Unit Manager; Kent Goodyear, OSP C-Unit Case Manager; Sgt. Graham, Correctional Officer; Sgt. Kelley, Correctional Officer; Cpl. Boswell, Correctional Officer; Cpl. Branson, Correctional Officer; Lt. Thorp, Supervisory Officer; Mr. Price, OSP Chief of Security; and Dr. Deakins, OSP Physician ("OSP/DOC Defendants").

The Court has before it for consideration Plaintiff's amended complaint [Dkt. No. 11], special reports prepared by Core Civic/DCF and DOC officials at the direction of the Court, in accordance with *Martinez v. Aaron*, 570 F.2d 317 (10th Cir. 1978) [Dkt. Nos. 144, 147], Defendants' motions to dismiss or for summary judgment [Dkt Nos. 145, 148], Plaintiff's responses to the motions [Dkt. Nos. 152, 159], and Plaintiff's motions for temporary restraining order and preliminary injunction [Dkt. Nos. 154, 164].

**Standards of Review**

The pleading standard for all civil actions was articulated in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).  *See Ashcroft v. Iqbal*, 556 U.S. 662, 684 (2009).  To avoid dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), a complaint must present factual allegations, assumed to be true, that "raise a right to relief above the speculative level." *Twombly*, 550 U.S. at

555.  The complaint also must contain "enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.  A court must accept all the well-pleaded allegations of the complaint as true, even if doubtful in fact, and must construe the allegations in the light most favorable to the plaintiff. *Id*. at 555-56. "So, when the allegations in a complaint, however true, could not raise a claim of entitlement to relief," the cause of action should be dismissed.  *Id*. at 558.

A pro se plaintiff's complaint must be broadly construed under this standard.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  The generous construction to be given to the pro se litigant's allegations, however, "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). Notwithstanding a pro se plaintiff's various mistakes or misunderstandings of legal doctrines or procedural requirements, "if a court can reasonably read the pleadings to state a valid claim on which the plaintiff could prevail, it should do so . . . ." *Id*.  A reviewing court need not accept "mere conclusions characterizing pleaded facts."  *Bryson v. City of Edmond*, 905 F.2d 1386, 1390 (10th Cir. 1990); *see also Twombly*, 550 U.S. at 555.  The Court "will not supply additional factual allegations to round out a plaintiff's complaint or construct a legal theory on a plaintiff's behalf."  *Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir. 1997).

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A dispute is genuine if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Id.*  In making this determination, "[t]he

evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.  A party opposing a motion for summary judgment, however, may not simply allege there are disputed issues of fact; rather, the party must support its assertions by citing to the record or by showing the moving party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c).  Thus, the inquiry for this Court is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52.

**Plaintiff's Allegations**

Plaintiff has listed his allegations as follows:

1.      On May 30, 2017, Plaintiff was transferred to DCF from Lawton Correctional Facility, where he was diagnosed with lumbar and cervical degenerative disc disease with probable spinal stenosis.  After the transfer, he was denied adequate medical care by Dr. Fred Sanders, who failed to provide follow-up care to determine which discs are deteriorating, the severity of the spinal stenosis, and the extent of his radiculopathy.  [Dkt. No. 11 at 27].

2.      In September 2017, DCF medical personnel began to delay his requests for medical care and had him see Susan Burkhalter, a nurse practitioner, who could not assess his medical needs.  *Id.*

3.      In order to silence Plaintiff, Terry Underwood, DCF Grievance/Misconduct Coordinator, refused to assist him in correcting an affidavit while Plaintiff was on grievance restriction.  *Id.*

4.      After Plaintiff filed a lawsuit in *Davis v. Core Civic*, CIV-17-JHP-SPS in this Court, DCF Attorney Darrell Moore directed Dr. Fred Sanders, the DCF physician, not to provide

4

specialist care without Moore's approval.  *Id.*

5.      In May 2018, Plaintiff was housed on EA-Pod-Cell 106, Max Unit, when Ms. Edwards intentionally denied him access to the research computer.  When he filed a grievance about her actions, she and Ms. Hassan, the law library supervisor, wrote false misconducts in retaliation.  Ms. Edwards called him a "rat' and a "snitch" in the presence of other inmates, thereby endangering his health and safety.  Plaintiff's grievance against her was not processed because Mr. Underwood would not help him correct a necessary affidavit for his grievance restriction.  *Id.*

6.      In May-October 2018, Defendants Morales, the mailroom supervisor, and Maria Martinez, the mailroom clerk, retaliated against Plaintiff with false misconducts after learning he had filed a complaint against them.  *Id.* at 28.

7.      Mr. Key, the misconduct investigator, did not conduct an impartial investigation concerning the false misconducts, even when there was camera evidence.  In July 2018, Ms. Morales wrote a false misconduct claiming Plaintiff had assaulted her by pulling on two pieces of paper she slid through the crack of a door.  She asserted Plaintiff had pulled on it so fast that she hit her finger against the door jamb, injuring her.  In May 2018, Ms. Martinez wrote another false misconduct claiming Plaintiff had written her a love letter. These misconducts were written in retaliation to punish him for exercising his constitutional right to file a grievance.  *Id.*

8.      Supervisor Staff Chief J. Dorman, Warden Yates, Chief Brown, Mr. Perez, Gentry, and Terry Underwood maintained a policy and custom that allowed DCF staff to violate his constitutional rights by failing to remedy wrongs after learning of them.  They also showed reckless disregard for his health and safety and deliberate indifference to his serious medical needs, maintained a code of silence about staff misconduct, and directly participated in retaliation as

reprisal for Plaintiff's grievances by allowing the grievance process to become an adversarial process. Johnny Blevins, DOC Inspector General, refused to investigate Plaintiff's being set up to be attacked on September 27, 2019, and why he was the only inmate placed in the segregation housing unit ("SHU"). *Id.*

9. Mark Knutson, DOC Director's Designee, has shown a reckless disregard for Plaintiff's health and safety. He failed to remedy the violations of Plaintiff's constitutional rights in June 2017 and November 2018 by not ensuring that Defendants Underwood, Yates, Key, Robinson, Ade, Dorman and Brown were following DOC policies. Knutson also refused to conduct an independent investigation of his grievance and misconduct issues, relying instead on decisions made by DCF staff, thus denying Plaintiff his rights of redress, access to the courts, equal protection, and the prohibition against cruel and unusual punishment. *Id.* at 29.

10. On September 14, 2018, Tiffany Ade, DCF Max Unit Manager, spoke with Counselor Pfaff. Counselor Boggs placed Plaintiff in a Max Unit cell EC-Pod. Plaintiff was on the top bunk, because another inmate already was in the cell. The other inmate was a "Playboy Crip" gang member, however, Plaintiff had a separatee against security threat groups ("STG") and had asked not be to housed in a cell with them. *Id.*

On September 25 and 27, 2018, Rhoda Shivley told the cellmate that Plaintiff was a rat and a snitch, and on September 27, 2018, the cellmate stabbed Plaintiff near his right eye and stabbed him several times in the left eye, stating he didn't stay with rats. Defendant Wayda Stamey, Correctional Officer, looked in the cell and saw Plaintiff bleeding and dodging the weapon. She left the cell, returned about 10 or 15 minutes later, then left again. Stamey claimed in his Incident Report that he went to get Case Manager Pfaff, although he could have radioed for assistance.

Stamey's actions demonstrated a reckless disregard for his health and safety. *Id.*

Defendant Ade ordered that Plaintiff be placed in the SHU when he was the victim in the attack. The cellmate was rewarded by being allowed to stay in EC-13 and watch his television. Within two hours of the incident, Defendant Ade had issued Plaintiff two misconducts for fighting and for having a weapon. The weapon misconduct later was dismissed. Plaintiff was found guilty of fighting in October 2018, and Warden Yates refused to revisit the misconduct after he had affirmed it. *Id.* at 30.

Defendant Ade continued to attempt to place Plaintiff in a cell without honoring his bottom bunk restriction or his request to be separated from STG. Plaintiff began to believe she repeatedly had put his life in danger, and he suspected she had set him up to be attacked on September 27, 2019. He claims Ade made a concerted effort with Counselor Boggs, Counselor Pfaff, Case Manager Pfaff, and C.O. Collins. Plaintiff refused to be placed first in a cell, because Ade had told him she would move whomever she wanted to cell with him. Because Plaintiff was in fear for his life, he refused to leave the SHU where he was in a single cell. The supervisory staff of Warden Yates, Chief Brown, Assistant Wardens Perez and Gentry, Chief Dorman, Ade, and Underwood refused to take the necessary steps to ensure he would not be attacked by other inmates because staff were calling him a rat and a snitch. *Id.*

11.     Plaintiff wrote Chief Brown, Warden Yates, and DOC Inspector General Blevins, outlining the September 27, 2018, incident and why he believed he was set up. He requested an investigation, but this supervisory staff refused to remedy the wrong, showing a reckless disregard for Plaintiff's health and safety. They also continued to allow Ms. Ade to make wrongful cell assignments and to fail to document Plaintiff's separatee request. *Id.* at 31.

7

12.      In October 2018, Ms. Ade told Case Manager Pfaff to initiate a transfer package for Plaintiff.  Ade advised Plaintiff that the DOC told Warden Yates to put in the transfer packet. Plaintiff believes he was set up so he could be transferred after his September 17, 2018, MRI. After the MRI was read, he was attacked on September 18, 2018, denied adequate medical care, and told he would see a neurologist, but he received no treatment after the attack.  He was transferred to OSP on January 9, 2019, and his prescriptions were discontinued there.  *Id.*

13.      DOC Director Joe Allbaugh indirectly participated in the above incident, because he failed to oversee the people who violated Plaintiff's rights or failed to adequately train and monitor private prison officials.  DCF officials submitted an affidavit admitting to a memorandum concerning two policies that were created to "differ slightly."  *Id.*

14.[1]    The website states that Plaintiff escaped.  *Id.* at 32.

15.      When Plaintiff was transferred to OSP on January 9, 2019, his pain medication was discontinued.  When he saw Dr. Marlar on January 14, 2019, the doctor claimed he did not know anything about Plaintiff's spinal condition, because his DCF medical records had not been received.  Dr. Marlar advised Plaintiff to write to Pam Weddal in OSP Medical, however, her January 16, 2019, response stated his medical records with the MRI report were in his OSP medical record.  *Id.*

Dr. Marlar said he was not Dr. Sanders, and he did not prescribe narcotics to inmates. Further, Plaintiff would have to "twist his arm" to get Tylenol or ibuprofen.  Dr. Marlar also told Plaintiff that he would not submit a referral for care by a neurologist.  Plaintiff submitted sick call

---

[1] Plaintiff's amended complaint does not include Claims 14 or 15.

slips but was told there was nothing that could be done.  *Id.*

16.     Plaintiff's case manager, Lisa Williams, saw him on January 16, 2016, and he attempted to tell her that he wanted to be separated from STG because of his previous attack.  Ms. Williams advised that if he did not know the full name of the particular STG inmates, she would not document his request.  She also allegedly refused to document his bottom bunk restriction, because she did not have directions form Medical.  *Id.*

On January 18, 2019, Ms. Williams placed Plaintiff in a cell in C-Unit on the top bunk.  On January 29, 2019, he experienced chest pains with a heart rate of 156 bpm.  He was treated with nitroglycerine and Coumadin and held for three days of observation.  *Id.* at 33.

OSP supervisory staff Margaret Green, Kent Goodyear, and Jerry Perry disregarded the risk to his health and safety when they would not allow him to document that he wanted to be separated from STG.  When Plaintiff was released from Medical on February 1, 2019, Margaret Green refused to discuss his STG request and told Jerry Perry to place him on H-Block after Nurse Chris emailed Green about his bottom bunk restriction.  *Id.*

17.     Plaintiff was taken to H-Block on February 1, 2019, because Green was upset of his unwillingness to consent to being on C-Unit in a top bunk.  *Id.*

18.     On February 1, 2019, Jerry Perry, the H-Block Unit Manager, placed Plaintiff in a cell with a gang member from the Neighborhood Crip.  *Id.*

19.     On February 5, 2019, after Plaintiff had filed an emergency and sensitive grievance, Perry had him moved to a new cell where he would have had to walk past the cell of a gang member named Markus Stevens.  Plaintiff was concerned that if Stevens saw him, Plaintiff's cellmate would be alerted to attack Plaintiff.  When Plaintiff refused to move, he was pepper-sprayed

without warning on Lt. Thorp's instructions. He then was taken to Medical where he was placed on suicide watch. OSP still has not documented his request for separation from STG. *Id.* at 33-34.

20.     On February 7, 2019, Perry placed Plaintiff in another cell with a gang member form the Hoover Crip, and on February 11, 2019, Perry moved him again to a cell with a gang member from the Blood. *Id.* 34.

21.     On February 14, 2019, Plaintiff was taken to Medical to see Dr. Marlar, and upon his return, he was assaulted by Cpl. Branson in the presence of Sgt. Kelly. Branson could have removed his handcuffs, but instead opened the cell door, removed the leg irons and tightened the handcuffs too tightly. Branson then placed the leg irons cuff on the handcuff chain, forced Plaintiff to his knees, and pulled Plaintiff's arms out through the food port, causing him extreme pain. On March 7, 2019, Plaintiff received an allegedly false misconduct for lying to staff. *Id.*

22.     When Plaintiff arrived at OSP on January 19, 2019, he was targeted by OSP staff who had been told about him from the defendants in another lawsuit against DCF and DOC defendants. The OSP personnel harassed him as soon as he arrived, withheld his legal and personal property until February 15, 2017, then only gave him some of his personal items. *Id.*

23.     The OSP physician has not diagnosed him, instead using "chart reviews" and determinations by DCF doctors who have an agenda not to recommend further treatment because of the lawsuit against them. Dr. Marlar will not prescribe pain medication for personal reasons that are unrelated to Plaintiff's spinal condition and pain. In addition Dr. Marlar considers Neurontin and Balcofen, medications Plaintiff has taken over the past ten years, to be narcotics. Plaintiff contends Dr. Marlar is deliberately indifferent to his serious medical needs and that he

was transferred by DOC in retaliation for filing an earlier lawsuit. He also believes his life is in danger. *Id.* at 35.

24.     Plaintiff filed an emergency and sensitive grievance to Warden Mike Carpenter concerning his permitted legal and personal property, the use of excessive force on February 1 and 14, 2019, and his placement with a cellmates who are gang members. He is on grievance restriction and could not file an affidavit as required by policy because of his withheld property. He, therefore, was ignored. *Id.*

25.     On February 1, 2019, after his release from medical observation, he was told by guards that Margaret Green, the C-Unit manager, would speak to him on C-Unit. When he went to the unit, however, Ms. Green refused to talk to him, and Kent Goodyear would not listen to his concerns about being on a top bunk or his requests for separatees against an inmate who threatened to kill him. Goodyear allegedly yelled at Plaintiff and said he would not document his separatee request. *Id.* at 36.

Green told Jerry Perry, the H-Block Unit Manager, to place Plaintiff on H-Block after Medical emailed her about a bottom bunk for him. Sgt. Graham came to escort him to H-Block after he sat on the floor because his concerns were being ignored. He contends the staff were intentionally trying to provoke him. While twisting Plaintiff's waist on the trip to H-Block, Sgt. Graham said he should have fought it out with his cellmate. Once Plaintiff was in H-Block, Perry refused to document his concerns and placed him in the cell with a Neighborhood Crip. *Id.*

These defendants showed a reckless disregard to his health and safety, and at the time of the amended complaint, he was in a cell with an STG who was told to attack him. *Id.*

26.     On February 5, 2019, Lt. Thorp ordered Plaintiff to be pepper-sprayed in his cell

after Perry ordered Plaintiff and his cellmate to be moved to NW-2-G.  Plaintiff knew that if he had walked past NW-2-G, Inmate Markus Stevens would have told Plaintiff's cellmate to attack him.  *Id.*

27.     Plaintiff's grievances to Warden Carpenter were ignored, because Plaintiff is on grievance restriction and did not have his required property to comply with the restriction.  On January 11, 2019, he personally told Carpenter that he did not have his property.  Plaintiff states Carpenter and the OSP staff have failed to remedy the problem, have vilified him as the "bad guy" and "trouble maker," and have acted in concert with DCF staff, showing a reckless disregard for his health and safety.  *Id.* at 36-37.

28.     Capt. T. McClellen directly participated in conspiring to cover up the use of unnecessary force by Cpl. Branson and Cpl. Bosell on February 14, 2019.  Plaintiff claims he was maliciously and sadistically assaulted for no reason.  McClellen conspired to cover up this unnecessary use of force when his handcuffed hands were in the food port.  During the incident, Sgt. Kelly smiled at Plaintiff and said, "Happy Valentine's Day" before walking away.  *Id.* at 37.

On March 7, 2019, Capt. McClellen compounded the Eighth Amendment violation by issuing Plaintiff a fabricated misconduct alleging he had lied to staff.  Mr. Price, Chief of Security, claimed he viewed the camera footage, however, the prison officials maintain a code of silence concerning staff misconduct.  *Id.*

29.     The defendants are in violation of Plaintiff's equal protection rights.  He has two other civil matters pending concerning the private prison's denial of Plaintiff's access to the courts. He has shown that DOC and OSP officials are acting in concert with the defendants in the other cases.   He further claims he has shown supervisory liability in the defendants' personal

involvement.  Buddy Honaker ignored his emergency and sensitive grievance, and when Plaintiff told Honaker that he did not have his legal documents to comply with the grievance restriction requirement, Honaker extended the grievance restriction requirement.  *Id.* at 38.

30.     Dr. Deakins refused to provide adequate medical care in February 2009.  When Plaintiff described the pain in his hands, Dr. Deakins did nothing to treat him.  *Id.*

**Exhaustion of Administrative Remedies**

The DCF Defendants have filed a motion for summary judgment,  [Dkt. No. 145], and the OSP/DOC Defendants have filed a motion to dismiss or for summary judgment [Dkt. No.  148].  The defendants allege, among other things, that Plaintiff  has failed to exhaust the administrative remedies for any of his claims.  "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  Inmates are required to exhaust available administrative remedies, and suits filed before the exhaustion requirement is met must be dismissed.  *Booth v. Churner*, 532 U.S. 731, 740-41 (2001); *Yousef v. Reno*, 254 F.3d 1214, 1216 n.1 (10th Cir. 2001).  "An inmate who begins the grievance process but does not complete it is barred from pursuing a § 1983 claim under PLRA for failure to exhaust his administrative remedies." *Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002) (citation omitted).  In deciding a motion to dismiss based on nonexhaustion, the Court can consider the administrative materials submitted by the parties.  *See Steele v. Fed. Bureau of Prisons*, 355 F.3d 1204, 1212 (10th Cir. 2003), *abrogated in part on other grounds*, *Jones v. Bock*, 549 U.S. 199 (2007).

According to the DOC Offender Grievance Process, OP-090124, which is applicable to

both state and private prisons in Oklahoma, an inmate first must attempt to resolve his complaint informally by communicating with staff within three days of the incident. If that is unsuccessful, he may submit a Request to Staff (RTS) to the appropriate staff member within seven calendar days of the incident, alleging only one issue or incident per form. If the offender does not receive a response to his RTS within 30 calendar days of submission, he may submit a grievance to the Review Authority, asserting only the issue of the lack of response to the RTS. If the complaint is not resolved after the response to the RTS, the offender then may file a grievance, attaching the RTS with the response from the staff member. Grievances that are sensitive or concern a substantial risk of personal injury, sexual assault, or other irreparable harm may be submitted directly to the Reviewing Authority. If the grievance does not resolve the issue, the inmate may appeal to the DOC Administrative Review Authority (ARA), personal identity ARA, or Medical ARA ("MARA"), whichever is appropriate. The administrative process is exhausted only after all of these steps have been taken. [DOC OP-090124; Dkt. Nos. 145-3; 145-4; 147-32].

This policy also instructs that if the inmate does not follow instructions as explained in the policy provision and on the grievance forms, the grievance may be returned to him unanswered for proper completion. If the inmate is allowed to resubmit the grievance, he must properly resubmit the grievance within ten days of receipt. The continued failure to follow instructions may result in restrictions being imposed on the inmate. *Id.*

**DCF Defendants**

The DCF Defendants allege Plaintiff did not exhaust any issue he has brought before the Court. He submitted multiple grievances during his incarceration at DCF from May 31, 2017 to January 9, 2019. His grievance records for that time consist of 423 pages of materials. [Dkt. No.

14

145-4].  In her affidavit, Terry Underwood, DCF Grievance Coordinator, outlined in detail when the grievance was filed, when it was responded to or returned, and whether the grieved issue was exhausted.  [Dkt. No. 145-2].  According to Ms. Underwood, Plaintiff properly used the administrative remedies process in only two instances.  *Id.* at ¶ 30 and ¶ 33.  Neither of those grievances, however, concerned the issues alleged in his amended complaint.  [Dkt. No. 145-4 at 141-52, 176-87].  Ms. Underwood's affidavit is set forth below in pertinent part, and the referenced grievance records are at Dkt. 145-5 through 145-12.

> On June 20, 2017, Mr. Davis submitted Grievance No. **2017-148**.  The grievance was initially returned to him unanswered noting that it was not an issue of a sensitive nature.  Plaintiff was told he could correct and resubmit within ten (10) days.  Instead of correcting and resubmitting the Grievance, Mr. Davis submitted an appeal to the Administrative Review Authority at DOC.  That appeal was returned to him unanswered on July 10, 2017, noting that it had been determined that the grievance was not of a sensitive nature and noting that since he had failed to follow proper procedures he was out of time.  This record is at Grievance Records, Part 1, Pgs. 1-5.

> Mr. Davis was placed on grievance restriction on June 29, 2017 because he had repeatedly submitted Requests to Staff about issues that had previously been addressed by staff.  He had submitted more than 21 Requests to Staff during June 2017.  The placement on grievance restriction is at Grievance Records, Part 1, Pg. 6.

> On July 11, 2017 Mr. Davis submitted an appeal to the Administrative Review Authority concerning his placement on grievance restriction.  The DOC ARA designated that appeal number ARA **17-183**.  The appeal/request was returned to Mr. Davis on July 21, 2017 and his appeal/request to be removed from grievance restriction was denied by DOC ARA. That record is at Grievance Records, Part 1, Pgs. 7-13.

> On June 29, 2017, Mr. Davis submitted a Request to Staff to Assistant Warden Gentry regarding the facility law library.  On June 30, 2017 Assistant Warden Gentry responded.  Mr. Davis submitted Grievance No. **2017-171** on July 10, 2017 and attached the Request to Staff that had been submitted to Assistant Warden Gentry.  The grievance was returned to Mr. Davis unanswered on July 26, 2017, noting that the action requested in the Request to Staff did not match the Grievance relief sought, that the Grievance was not specific as to dates, places, and personnel

15

involved, and that Mr. Davis was on grievance restriction and the necessary affidavit was not correct. Mr. Davis was given 10 days to correct and re-submit but he did not do so. That record is at Grievance Records, Part 1, Pgs. 14-22.

On June 29, 2017, Mr. Davis submitted a Request to Staff to the Health Services Administrator. The Health Services Administrator responded on July 3, 2017. Mr. Davis submitted Grievance **2017-172** on July 10, 2017 asking for shoes, a thicker mattress, a chair for his cell, and recreation. The grievance was returned to him unanswered on July 26, 2017. That record is at Grievance Records, Part 1, Pgs. 23-31.

Mr. Davis submitted a Request to Staff on July 25, 2017 to Library Supervisor Burney. Ms. Burney responded on July 26, 2017 to that RTS noting that she had informed Mr. Davis when she picked up his copies what day the copies would be returned, and that Mr. Davis had agreed. Plaintiff submitted Grievance No. **2017-194** on August 8, 2017. The Grievance was returned unanswered on August 9, 2017. The return memorandum contained specifics about Plaintiff's submission errors. That record is at Grievance Records, Part 1, Pgs. 32-40.

Plaintiff submitted a Request to Staff to the Library Supervisor on July 31, 2017. She responded on August 1, 2017. Plaintiff submitted Grievance No. **2017-195**. That Grievance was returned unanswered and noted that Plaintiff could correct and resubmit the grievance within 10 days. He did not do so. That record is at Grievance Records, Part 1, Pgs. 41-50.

Plaintiff submitted a Request to Staff to Warden Yates on July 31, 2017 complaining that he had been subjected to retaliation when he was placed on grievance restriction. Warden Yates responded to the Request to Staff on August 1, 2017. Plaintiff submitted Grievance No. **2017-203** on August 9, 2017. The grievance was returned unanswered on August 9, 2017 noting that he was on grievance restriction and had not properly submitted the grievance. Mr. Davis was given 10 days to correct and re-submit but he did not do so. That record is at Grievance Records, Part 1, Pgs. 51-58.

Mr. Davis submitted a Request to Staff to Warden Yates on November 6, 2017. Mr. Davis then submitted Grievance No. **2017-323** on November 30, 2017 regarding mailroom procedures. The grievance was returned to him unanswered on November 30, 2017. Mr. Davis was provided specifics regarding the return and was provided 10 days to correct and re-submit. Mr. Davis resubmitted Grievance No. 2017-323 on December 6, 2017. The grievance was again returned unanswered on December 12, 2017 noting that he was on grievance restriction and his affidavit was incorrect and because of his failure to properly submit, he was now out of time.

That record is at Grievance Records, Part 2, Pgs. 59-76.

Mr. Davis submitted a Request to Staff to Chief Dorman on May 3, 2018.  The Request to Staff was responded to the same day by Ms. Hassan, noting that it was a duplicate submission.  Mr. Davis submitted Grievance No. **2018-125** on May 17, 2018.  That Grievance was returned unanswered on May 22, 2018. Mr. Davis was provided 10 days to correct and resubmit, but he failed to do so. That record is at Grievance Records, Part 2, Pgs. 77-84.

Mr. Davis submitted a Request to Staff to the Warden on May 4, 2018 regarding a misconduct he had received.  That Request to Staff was responded to by Unit Manager Ade, noting that misconducts are not grievable, but telling Mr. Davis that he could request a hearing.  Mr. Davis submitted Grievance No. **2018-126** on May 17, 2018.  The grievance was returned unanswered on May 22, 2018 noting that misconducts are not grievable and that he was on grievance restriction and his submission had not been proper.  That record is at Grievance Records, Part 2, Pgs. 85-92.

The Oklahoma DOC inmate/offender grievance policy clearly states that if the policy instructions are not followed, an inmate's submitted grievance may not be answered, and the grievance is to be returned

Mr. Davis submitted a Request to Staff to Ms. Hassan on May 3, 2018.  Ms. Hassan responded on May 3, 2018.  Mr. Davis submitted Grievance No. **2018-127**.  That grievance was returned unanswered on May 22, 2018 noting that Mr. Davis is on grievance restriction and his submission was not properly made. He was given 10 days to correct and resubmit but did not do so.  That record is at Grievance Records, Part 2, Pgs. 93-100.

Mr. Davis submitted a Request to Staff to Ms. Dorman on May 3, 2018. Ms. Hassan responded to the Request to Staff on May 3, 2018 noting that the request was a duplicate.  Mr. Davis submitted Grievance No. **2018-128**.  That grievance was returned unanswered on May 22, 2018 and he was given 10 days to correct and resubmit, but he did not do so.  That record is at Grievance Records, Part 2, Pgs. 101-108.

Mr. Davis submitted a Request to Staff to Warden Yates on April 30, 2018. Warden Yates responded on May 10, 2018.  Plaintiff submitted Grievance No. **2018-129**.  That grievance was returned unanswered on May 22, 2018 noting that he was on grievance restriction and his submission had not been proper. He was given 10 days to correct and resubmit but did not do so.  That record is at Grievance Records, Part 3, Pgs. 109-116.

17

Mr. Davis submitted a Request to Staff to Warden Yates on May 14, 2018.  That request was responded to by Chief Dorman.  Plaintiff submitted Grievance No. **2018-134**. The grievance was returned unanswered on May 30, 2018, noting that classification movement requests to transfer are not grievable and noting that he was on grievance restriction and his submission had not been proper.  That record is at Grievance Records, Part 3, Pgs. 117-124.

Mr. Davis submitted a Request to Staff to Warden Yates on May 14, 2018.  That Request was responded to on May 15, 2018 by Ms. Dorman. Mr. Davis submitted Grievance No. **2018-135**.  That grievance was returned unanswered on May 30, 2018 with the submission errors specifically noted. That record is at Grievance Records, Part 3, Pgs. 125-132.

Plaintiff submitted a Request to Staff to Chief Dorman on May 10, 2018.  Chief Dorman responded on May 15, 2018.  Plaintiff submitted Grievance No. **2018-136** on May 24, 2018.  The grievance was returned unanswered to Mr. Davis on May 30, 2018 with reasons for the return specified.  Additionally, the grievance was identified as a duplicate of an earlier submitted grievance.  That record is at Grievance Records, Part 3, Pgs. 133-140.

The one-year grievance restriction expired on June 29, 2018.

Mr. Davis submitted a Request to Staff on July 2, 2018 to Unit Manager Ade. She responded on July 3, 2018.  Mr. Davis submitted Grievance No. **2018-173** on July 16, 2018.  The  grievance was returned unanswered on July 18, 2018 and he had 10 days to correct and resubmit.  The Grievance was re-submitted and was answered on August 1, 2018, stating: After an investigation of the matter DOC Policy OP-030115 states:  The staff member is to provide security and supervision of the law library and inmates who are using the library.  The staff member may assist inmates by showing them how to conduct legal research and may assign a research assistant to help an inmate conduct research and draft pleadings that relate to conditions of confinement or post-conviction relief.  Policy does not say that Inmate Davis has to give his personal legal information to the inmate research assistant.  The research assistant is there if needed to provide help regarding legal issues. Mr. Davis was granted relief. That record is at Grievance Records, Part 3, Pgs. 141-152. However, this Grievance did not exhaust any claim Mr. Davis has brought forward to the Court in his Amended Complaint.

Mr. Davis submitted a Request to Staff on July 16, 2018, to the mailroom supervisor. Ms. Morales responded to that Request to Staff on July 18, 2018. Mr. Davis submitted Grievance No. **2018-180** on July 25, 2018.  That grievance was

returned unanswered on July 31, 2018. The return memorandum additionally noted that Mr. Davis was being warned that continued abuse of the process would result in him being placed back on grievance restriction. Mr. Davis was given 10 days to correct and resubmit and he did resubmit Grievance No. **2018-180** on August 8, 2018. His re-submission was returned unanswered on August 13, 2018 and the reasons for the return were provided to him. That record is at Grievance Records, Part 3, Pgs. 153-163.

Mr. Davis submitted a Request to Staff on July 19, 2018 to Ms. Hassan. Ms. Morales responded on July 10, 2018 noting that his request was a duplicate request. Mr. Davis then submitted Grievance No. **2018-181** on July 25, 2018. Plaintiff's grievance was returned unanswered on July 31, 2018 and he was again warned that continued process abuse would result in him being placed on grievance restriction. Mr. Davis resubmitted Grievance **2018-181** on August 8, 2018. That grievance was returned unanswered on August 13, 2018 with the reasons for the return specified. That record is at Grievance Records, Part 4, Pgs. 164-175.

Mr. Davis filed a Request to Staff on July 19, 2018 to Ms. Martinez in the mailroom. Ms. Morales responded on July 18, 2018 stating that the Request to Staff was a duplicate request. Mr. Davis submitted Grievance No. **2018-182** on July 25, 2018. That grievance was returned unanswered on July 31, 2018 and gave Mr. Davis 10 days to correct and resubmit. He did so on August 8, 2018 and asked what had happened to his legal documents. The requested grievance relief was granted, noting that after investigation his documents had been mailed out on July 5, 2018, certified mail, with a charge of $21.50. That record is at Grievance Records, Part 4, Pgs. 176-187. However, this Grievance did not exhaust any claim Mr. Davis has brought forward to the Court in his Amended Complaint.

Mr. Davis filed a Request to Staff on July 17, 2018 to Chief Dorman. Chief Dorman responded to that request on July 24, 2018. Mr. Davis submitted Grievance **2018-183** on July 31, 2018. The grievance was returned unanswered on July 31, 2018 with specific reasons for the return noted. That record is at Grievance Records, Part 4, Pgs. 188-193.

Mr. Davis submitted a Request to Staff to Health Services Administrator Larimer on July 24, 2018. That Request to Staff was responded to by Ms. Lysinger. Mr. Davis submitted Grievance No. **2018-188** on July 31, 2018. The grievance was returned unanswered on August 13, 2018 and he was given 10 days to correct and resubmit, but he did not do so. That record is at Grievance Records, Part 4, Pgs. 194-199.

Mr. Davis submitted a Request to Staff on July 30, 2018 to Warden Yates. The

19

Request to Staff was responded to on July 31, 2018 by Unit Manager Ade. Mr. Davis then submitted Grievance No. **2018-193** on August 6, 2018. The grievance was returned unanswered on August 13, 2018 with reasons specified for the return. Mr. Davis was given 10 days to correct and resubmit, but he did not do so. That record is at Grievance Records, Part 4, Pgs. 200-205.

On August 7, 2018, Warden Yates sent a letter to Mr. Davis notifying him that he was being placed on Grievance Restriction for 12 months because of repeated abuse of the administrative remedies process, i.e., the repeated submission of frivolous grievances and repetitive request to staffs. That record is at Grievance Records, Part 4, Pg. 206.

Mr. Davis submitted a Request to Staff on July 30, 2018 to me, the facility's Grievance Coordinator. The Request to Staff was responded to on July 31, 2018, noting that OP-090124 states only 1 issue per grievance and 1 issue per Request to Staff. Mr. Davis submitted Grievance No. **2018-194** on August 14, 2018. That Grievance was denied on August 14, 2018 noting that only one issue per grievance is allowed. Mr. Davis did not appeal the decision to the Administrative Review Authority. That record is at Grievance Records, Part 5, Pgs. 207-211.

Mr. Davis submitted a Request to Staff on July 25, 2018 to Warden Yates. The Request to Staff was responded to on July 31, 2018 by Warden Yates. Mr. Davis submitted Grievance No. **2018-196** on August 8, 2018 and the Grievance was returned unanswered on August 13, 2018. Mr. Davis was provided 10 days to correct and resubmit, but he did not do so. That record is at Grievance Records, Part 5, Pgs. 212-217.

Mr. Davis submitted a Request to Staff on July 25, 2018 to Warden Yates. The Request to Staff was responded to on August 2, 2018 by Warden Yates. Mr. Davis submitted Grievance No. **2018-197** on August 8, 2018. That grievance was returned unanswered on August 13, 2018, with reasons for the return specified. Mr. Davis was provided 10 days to correct and resubmit but did not do so. That record is at Grievance Records, Part 5, Pgs. 218-223.

Mr. Davis submitted a Request to Staff to Dr. Sanders on September 25, 2018. The request to staff was responded to and then Mr. Davis submitted Grievance No. **2018-263** on October 5, 2018. That grievance was returned unanswered on October 10, 2018 with reasons for the return specified. Mr. Davis was given 10 days to correct and resubmit, but he chose not to do so. That record is at Grievance Records, Part 5, Pgs. 224-234.

Mr. Davis submitted a Request to Staff to Warden Yates and Unit Manager Ade

responded on September 26, 2018.  Mr. Davis submitted Grievance No. **2018-264** on October 5, 2018.  That Grievance was returned unanswered on October 10, 2018 with specific reasons for the return specified.  He was given an opportunity to correct and resubmit the grievance within 10 days and he resubmitted Grievance 2018-264 on October 30, 2018. The grievance was again returned unanswered on October 31, 2018 and the reasons for the return were specifically noted.  That record is at Grievance Records, Part 5, Pgs. 235-257.

Mr. Davis submitted a Request to Staff to Dr. Sanders on September 19, 2018. That Request to Staff was answered by Ms. Lysinger noting that Mr. Davis should set out his request on a medical services form.  Mr. Davis instead filed Grievance No. **2018-268** asking for his radiology report.  That grievance was returned unanswered on October 11, 2018 noting that he was on grievance restriction and that proper documentation had not been submitted.  Mr. Davis was provided 10 days to correct and resubmit, but he did not do so.  That record is at Grievance Records, Part 5, Pgs. 258-267.

Mr. Davis submitted a Request to Staff to Dr. Sanders on October 2, 2018 asking that Dr. Sanders verify that he conferred with Davis' unit team regarding MRI results and his medical condition.  That Request to Staff was answered by Ms. Lysinger.   Mr. Davis filed Grievance No. **2018-271** stating that he needed emergency medical attention.  The grievance was returned unanswered on October 17, 2018 with specific reasons noted.  Mr. Davis was allowed 10 days to correct and resubmit, but he did not do so.  That record is at Grievance Records, Part 6, Pgs. 268-278.

Mr. Davis submitted a Request to Staff to Case Manager Pfaff on October 2, 2018. That Request to Staff was responded to by Case Manager Pfaff and Mr. Davis then submitted Grievance No. **2018-281**.  That Grievance was returned unanswered on October 25, 2018.  Mr. Davis was provided 10 days to correct and resubmit, but he chose not to do so.  That record is at Grievance Records, Part 6, Pgs. 279-287.

Mr. Davis submitted a Request to Staff to Diana Jones on October 18, 2018. The Request to Staff was responded to by Ms. Jones.  He then submitted Grievance No. **2018-301**.  That grievance was answered on November 2, 2018 as follows:

> Inmate Davis wanted to know why Diana Jones was screening his legal documents that he wanted copies of.  I/M Davis wanted a copy of everything for his personal records.  After an investigation of the matter by Diana Jones, Manager Operations Finance, DCF is not required by DOC Legal or the courts to provide a copy to I/M Davis of his filed documents.  If I/M Davis wants a copy of what he files

> with the court, he can handwrite himself a copy.  Mrs. Jones is in
> charge of controlling cost for the facility and this is why she was
> consulted.  DCF will copy and mail ONLY what is required by the
> courts and DOC. Inmate Davis's RELIEF IS DENIED.

Mr. Davis appealed Grievance **2018-301** to the Oklahoma Department of
Corrections' Administrative Review Authority.   The appeal was returned
unanswered to him with the reasons for the return noted. Mr. Davis was given ten
days to correct and resubmit, but he did not do so. That record is at Grievance
Records, Part 6, Pgs. 288-308.

Mr. Davis submitted a Request to Staff to Diana Jones on October 23, 2018. That
Request was responded to by Ms. Jones on October 25, 2018.  Mr. Davis then
submitted Grievance No. **2018-304** on November 5, 2018. That Grievance was
returned unanswered on November 8, 2018 and reasons for the return were
specified.  Mr. Davis was given 10 days to correct and resubmit and he resubmitted
Grievance No. **2018-304**. That Grievance was responded to on November 30, 2018
stating:

> Inmate Davis wanted to know the name of the court and the
> individual's name that Diana Jones spoke to concerning the issue of
> copying Inmate Davis's legal documents.  After an investigation of
> the matter by Diana Jones, Manager-Operations Finance, Diana
> Jones called the court that Inmate Davis had addressed his legal
> documents to. She does not recall the name of the court.  Mrs. Jones
> did not write down the individual's name nor does she remember it.
> Inmate Davis's RELIEF IS DENIED.

Mr. Davis appealed Grievance **2018-304** to the Oklahoma Department of
Corrections' Administrative Review Authority.   That appeal was returned
unanswered to him, with specific reasons for the return provide[d].  Mr. Davis was
given ten days to correct his errors and resubmit, but he did not do so.  That record
is at Grievance Records, Part 6, Pgs. 309-334.

Mr. Davis submitted a Request to Staff to Unit Manager Ade on October 23, 2018.
Unit Manager Ade responded to the request to staff on October 24, 2018.  Mr. Davis
filed Grievance No. **2018-310** asking to be placed in protective custody.   That
Grievance was responded to as follows:

> Inmate Davis wanted to be placed on Protective Custody Status.
> After an investigation of the matter by Tiffany Ade, Echo Unit
> Manager, due to the security regarding Maximum Security Inmates,

we do not place Max Inmates on Protective Custody. Inmate Davis was offered a single cell on EC twice, which he refused. The cellmate he got into a fight with is housed on EA. Section-06 Classification OP-060106 Page: 3 Effective Date: 08/20/2018 B. Staff Initiated Separation c. Non-association inmates will not be transferred to the same facility with the following exceptions: (1) Male inmates assigned to maximum security will not be housed in the same cell and if possible, will not be housed in the same area of the facility. Inmate Davis's RELIEF IS DENIED.

Mr. Davis appealed Grievance **2018-310** to the Oklahoma Department of Corrections' Administrative Review Authority. The appeal was returned unanswered to him with reasons for the return noted. He was given ten days to correct his errors and resubmit, but he did not do so. That record is at Grievance Records, Part 7, Pgs. 335-355.

Mr. Davis submitted a Request to Staff to Chief Dorman on November 19, 2018. That Request to Staff was answered by Chief Dorman on November 19, 2018. Mr. Davis filed Grievance No. **2018-339** and that Grievance was returned to him unanswered with reasons for the return. Mr. Davis was provided 10 days to correct and resubmit, but he did not do so. That record is at Grievance Records, Part 7, Pgs. 356-367.

Mr. Davis submitted a Request to Staff to Chief Dorman on November 19, 2018. That Request to Staff was answered by Chief Dorman on November 19, 2018 stating that Davis' level was dropped due to his continued refusal to house in Echo. Mr. Davis filed Grievance No. **2018-348**. That Grievance was returned unanswered on December 10, 2018 noting that the grievance was not timely filed. Specifically, he was demoted on September 1, 2018 and his Request to Staff was not submitted until November 14, 2018. That record is at Grievance Records, Part 7, Pgs. 368-376.

Mr. Davis submitted a Request to Staff to Dr. Sanders on November 16, 2018. That Request to Staff was answered by Health Services Administrator Ray Larimer on November 22, 2018. Mr. Davis then filed Grievance No. **2018-349** stating that he wanted to be seen by a qualified physician--a neurologist. That Grievance was returned unanswered with reasons for the return noted. Mr. Davis was given 10 days to correct and resubmit, but he did not do so. That record is at Grievance Records, Part 7, Pgs. 377-386.

Mr. Davis submitted a Request to Staff to Diana Jones on November 23, 2018. That Request to Staff was answered by Ms. Jones on November 28, 2018. Mr. Davis

filed Grievance No. **2018-357**. That Grievance was returned unanswered noting that Mr. Davis was on grievance restriction and had not included the proper documentation and noting that the grievance issue had been addressed in Grievance No. 2018-301. That record is at Grievance Records, Part 7, Pgs. 387-395.

Mr. Davis submitted a Request to Staff to me, the facility Grievance Coordinator, on November 26, 2018. That Request to Staff was answered on November 28, 2018. Mr. Davis then filed Grievance No. **2018-358**. The Grievance was returned unanswered on December 11, 2018 and the reasons for the return were noted. Mr. Davis was provided 10 days to correct and resubmit, but he chose not to do so. That record is at Grievance Records, Part 8, Pgs. 396-404.
Mr. Davis submitted a Request to Staff to Dr. Sanders on November 28, 2018. That Request to Staff was answered by Health Service Administrator Larimer on November 30, 2018. Mr. Davis filed Grievance No. **2018-359** asking for an appeal to ODOC Chief Medical Officer to review the MRI/Radiologist Report and to know the reason the referral for Neurologist was disapproved. That grievance was returned unanswered on December 10, 2018 and the specific reasons for the return were noted. Mr. Davis was provided 10 days to correct and resubmit, but he did not do so. That record is at Grievance Records, Part 8, Pgs. 405-413.

Mr. Davis submitted a Request to Staff to Warden Yates on November 20, 2018. That Request to Staff was answered by Assistant Warden Perez on November 26, 2018 specifically stating why he had been taken to segregation. Mr. Davis filed Grievance No. **2018-360**. The Grievance was returned to Mr. Davis unanswered on December 11, 2018 and specific reasons for the return were provided. That record is at Grievance Records, Part 8, Pgs. 414-423.

[Dkt. No. 145-2 at 4-15 (paragraph numbering omitted) (emphasis in original)].

Plaintiff alleges in his response to the DCF Defendants' motion for summary judgment [Dkt. No. 159] that his constitutional rights were violated by these defendants, and he reiterates the claims in his amended complaint. He claims the DCF Defendants' motion was presented in bad faith and is an act of fraud. He further claims he was impeded from exhausting his administrative remedies when the defendants did not follow the grievance policy, because his grievance restriction was unfounded.

24

The record shows that Plaintiff was placed on grievance restriction on June 29, 2017, because he had repeatedly submitted RTSs about issues that previously had been addressed by staff.  In fact, he submitted more than 21 RTSs during June 2017.  [Dkt. Nos. 145-2 at ¶ 12; 145-5 at 7].  In response to his appeal of the restriction to the DOC ARA in No. 17-183, the appeal was returned to him on July 21, 2017, and his request to be removed from the restriction was denied by the DOC ARA.  [Dkt. No. 145-5 part 1 at 9-14].

To the extent Plaintiff is complaining that DCF Defendants interfered in his ability to exhaust his administrative remedies, "[w]here prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."  *Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ((citation omitted).  In Plaintiff's case, however, the Court finds Plaintiff's claims of interference are unsupported and conclusory.

After careful consideration of the pleadings and other submitted materials in this case, the Court is of the view that there are no genuine issues of material fact concerning whether Plaintiff's claims are unexhausted.  Therefore, summary judgment must be **GRANTED** to the DCF Defendants pursuant to Fed. R. Civ. P. 56(a).

**OSP/DOC Defendants**

The OSP/DOC Defendants have moved for dismissal of Plaintiff's claims against them, alleging in part that Plaintiff failed to exhaust his administrative remedies for his claims.  [Dkt. No. 148].  In addition to the grievance process discussed above, the DOC has a misconduct appeal process which governs the process by which inmates are disciplined. *See* DOC OP-060125.  The

appeal process also sets forth an administrative remedy whereby inmates may appeal the outcome of a disciplinary proceeding.  [Dkt. No. 148-1].

Immediately upon an inmate's being found guilty of a disciplinary violation, the head of the facility imposing the discipline will conduct a sua sponte review of disciplinary proceedings and either affirm, dismiss, modify or remand the outcome of disciplinary proceedings.  *Id.* at Parts VI(D) and VII(E).  If the discipline is affirmed during the sua sponte review, the inmate may initiate a formal appeal, or "Due Process Review", which requires submission of an "Inmate Misconduct Appeal Form" to the head of the facility where the disciplinary hearing was conducted. *Id.* at VIII(A).  If the discipline is affirmed, the facility head decision is final for Class A and Class B violations.  *Id*. at VIII(A)(9).  If the violation at issue is a Class X misconduct or a Class A or B violation wherein restitution was imposed as a sanction, the inmate then may appeal the facility head's decision to the DOC's Administrative Review Authority.  *Id*. at VIII(B).  Only after each of these steps is taken has an inmate exhausted administrative remedies regarding disciplinary proceedings.

Plaintiff alleges the OSP/DOC Defendants violated his constitutional rights when they conspired against him for filing grievances and lawsuits, denied him medical care, improperly housed him with dangerous inmates, denied him a bottom bunk, modified agency policies, used excessive force, filed false misconducts, and failed to supervise staff.  He submitted the following grievances, as set forth in the OSP/DOC Defendants' motion to dismiss or for summary judgment:

> **Grievance MARA 19-7:**  On January 28, 2019, Plaintiff submitted an Emergency & Sensitive Grievance to the DOC's Medical Services Administrator Buddy Honaker, requesting that the DOC's Chief Medical Officer order DCF officials to send his medical records to OSP.   However, the Grievance was returned

unanswered because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance.  Special Report, Dkt. No. 147 ("S.R."), Attachments 50-51, pages 373-377.  There is no indication that the grievance was resubmitted properly.

**Grievance 19-46:**  On January 31, 2019, Plaintiff submitted an Emergency & Sensitive Grievance to OSP Warden Mike Carpenter asking to have excess legal property.  In response, Plaintiff was advised that he could only have one cubic foot of legal material in his cell.   Plaintiff was also advised that excess property could be stored and would be made available to him upon submission of a RTS.  S.R., Att. 7 and 8, pages 60-64.  Plaintiff did not appeal this grievance response. Affidavit of Mark Knutson, S.R., Att. 33, pages 146-147.

**Grievance 19-47:**  On January 31, 2019, Plaintiff submitted an Emergency & Sensitive Grievance to OSP Warden Mike Carpenter asking that a chair be placed in the law library at the research computer. In response, Plaintiff was advised that chairs were placed in the library on February 4, 2019.  S.R., Att. 9-10, pages 65-69.  Plaintiff did not appeal this grievance response.  S.R., Att. 33, pages 146-147.

**Grievance  19-48:**  On January 31, 2019, Plaintiff submitted an Emergency & Sensitive Grievance to OSP Warden Mike Carpenter asking to be placed in a cell with a bottom bunk and no cellmate.  In response, Plaintiff was advised that he was eligible for a bottom bunk but he was not restricted to a single cell. S.R., Att. 11-12, pages 70-74.  Plaintiff did not appeal this grievance response. S.R., Att. 33, pages 146-147.

**Grievance 19-83:**  On February 14, 2019, Plaintiff submitted an Emergency & Sensitive Grievance to OSP Warden Mike Carpenter complaining about an alleged assault committed by OSP staff.  Plaintiff asked that the incident be investigated and that the involved officers be reprimanded.   The grievance was returned unanswered because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance.  It was also rejected because it included an improper request for staff discipline.  Plaintiff was given 10 days to properly resubmit his grievance.  On February 26, 2019, Plaintiff attempted to resubmit Grievance 19-83, again asking for an investigation into the alleged assault. The grievance was again returned unanswered because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance.  S.R., Att. 35 through 38, pages 175-184.

**Grievance 19-76:**  On February 14, 2019, Plaintiff submitted an Emergency & Sensitive Grievance to OSP Warden Mike Carpenter asking for an investigation into a variety of concerns and requesting a bottom bunk, separatees and cessation

of harassment by staff.  The grievance was returned unanswered because, *inter alia*, Plaintiff failed to first submit a RTS, the grievance contained multiple issues and because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance.  Plaintiff was given 10 days to properly resubmit his grievance.  On February 26, 2019, Plaintiff attempted to resubmit Grievance 19-76 and asked for an investigation into staff, who were allegedly placing his life in danger and withholding legal property.  The grievance was again returned unanswered because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance. S.R., Att. 14 through 17, pages 78-87.

**Grievance 19-77:**  On February 14, 2019, Plaintiff submitted an Emergency & Sensitive Grievance to OSP Warden Mike Carpenter asking for separatees and for OSP staff to refrain from retaliating against him.  The grievance was returned unanswered because, *inter alia*, Plaintiff failed to first submit a RTS, the grievance contained multiple issues and because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance.  Plaintiff was given 10 days to properly resubmit his grievance.  On February 26, 2019, Plaintiff attempted to resubmit Grievance 19-77 and asked for an investigation into the underlying grievance and for  staff to refrain from placing his life in danger. The grievance was again returned unanswered because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance.  S.R., Att. 18 through 21, pages 88 - 97.

**Grievance 19-09:**  On February 14, 2019, Plaintiff submitted a Grievance to OSP Warden Mike Carpenter and the Health Services Administrator asking to be seen by a neurologist and for stronger pain medication.  The grievance was returned unanswered because Plaintiff, who was on grievance restriction at the time, failed to submit the proper documentation with the grievance. S.R., Att. 52 and 53, pages 378-383.

**Due Process Appeal 19-07:**  On April 3, 2019, Plaintiff submitted an appeal from a disciplinary proceeding wherein he was found guilty of making false allegations against staff.  However, the appeal was returned unanswered because it was incomplete.  Plaintiff was given 10 days to correctly resubmit the grievance but there is no indication that he did so.  S.R., Att. 22-30, pages 98-118.

[Dkt. No. 148 at 11-14 (paragraph headings added)].

According to the affidavit of Mark Knutson, Manager of the ARA at the DOC, a review of

Plaintiff's ARA records show that the ARA has not received a grievance or appeal from Plaintiff

regarding the above-referenced grievances and disciplinary proceedings. Therefore, he failed to exhaust the administrative remedies for his claims. [Dkt. No. 147-33 at 2]. The Court, therefore, finds Plaintiff has failed to exhaust the administrative remedies for his claims against the OSP/DOC Defendants, pursuant to 42 U.S.C. § 1997e(a), and the OSP/DOC Defendants' motion to dismiss [Dkt. No. 148] is **GRANTED**.

**Plaintiff's Motions for Temporary Restraining Order and Preliminary Injunction**

As a final matter, Plaintiff has filed three motions for a temporary restraining order and for a preliminary injunction. [Dkt. Nos. 154, 164, and 180]. The motions are repetitive and vague and essentially are asking for the relief that was sought in the amended complaint.

In the first motion, Plaintiff reiterates many of his Eighth Amendment claims in the amended complaint, as set forth above, and requests that the Court enter an injunction to grant him relief "to encompass the entire ODOC and all prisons owned by private companies." [Dkt. No. 154 at 23].

The second motion alleges the OSP Defendants have violated his constitutional rights to adequate medical care, to be free from assault by other inmates, and to be free from prison officials' arbitrary actions. [Dkt. No. 164 at 1-2]. He again raises many of the claims in his amended complaint, but also includes new claims.

Plaintiff's third motion for temporary restraining order again raises his claims regarding medical care, being called a snitch, excessive force, inciting violence, conspiracy, and false misconducts, among other issues. [Dkt. No. 180]. Again, he is attempting to re-urge the claims in the amended complaint or to raise new claims, but he is unclear about the relief he is requesting.

Further, to the extent he is attempting to raise new claims, he must present the new claim in a new civil rights complaint.

A temporary restraining order is intended to preserve the status quo until the Court can rule upon an application for preliminary injunction.  Fed. R. Civ. P. 65(b); James Wm. Moore, *Moore's Federal Practice*, § 65.30 (3d ed. 2008).  Because the Court is adjudicating plaintiff's preliminary injunction request with this Order, the Court concludes that a temporary restraining order is not necessary.

"An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 165 (2010). Furthermore, to be entitled to injunctive relief, the movant must establish a violation of his constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976).  Because the Court finds Plaintiff has failed to establish that his constitutional rights have been violated, his requests injunctive relief cannot be granted. Therefore, Plaintiff's motions for a temporary restraining order and for a preliminary injunction [Dkt. Nos. 154, 164, and 180] are **DENIED**.

**THEREFORE,**

1.     The DCF Defendants' motion for summary judgment [Dkt. No. 145] is **GRANTED**.

2.     The OSP/DOC Defendants' motion to dismiss [Dkt. No. 148] is **GRANTED**.

3.     Plaintiff's motions for a temporary restraining order and for a preliminary injunction [Dkt. Nos. 154, 164, and 180] are DENIED.

4.      Plaintiff's motion for court order to send his legal documents to Davis Correctional Facility [Dkt. No. 179] is **DENIED AS MOOT**.

**IT IS SO ORDERED** this 22nd day of April, 2021.

_____
JOHN F. HEIL, III
UNITED STATES DISTRICT JUDGE